OPINION
Appellant Franklin T. Alexander appeals a judgment of the Fairfield County Common Pleas Court convicting him of complicity to commit breaking and entering (R.C. 2923.03), and possession of criminal tools, (R.C.2923.24):
 ASSIGNMENTS OF ERROR ASSIGNMENT OF ERROR ONE APPELLANT'S CONVICTION IS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
 ASSIGNMENT OF ERROR TWO
 THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING APPELLANT TO A MAXIMUM SENTENCE FAR GREATER THAN THE MAXIMUM FOR THE OFFENSE OF THE HIGHEST DEGREE HEREIN.
 ASSIGNMENT OF ERROR THREE
 A JURY MAY NOT MAKE INFERENCES OF GUILT FROM A SPECULATIVE AND UNPROVEN CRIME.
During the evening hours of July 14, 2000, Deputy Gregory Stats of the Fairfield County Sheriff's Department was on routine patrol in the Pickerington area. A business called the Tractor Supply Company had been experiencing break-ins, so the deputy drove around the parking lot of the business more frequently. Shortly before 11:00 p.m., Deputy Stats pulled off the road and drove around the building. As he drove around the back of the building, he noticed a U-Haul truck parked next to a dumpster.
Appellant was seated in the driver's seat of the truck. When he saw the deputy, he immediately slouched down to the side. Another man, later identified as William Gardiner, came from behind the block wall near the dumpster, and sat in the passenger side of the vehicle. When the officer asked for identification, neither individual had a driver's license. Appellant produced an identification card, while Gardiner gave the officer his Social Security number. They claimed they were going from Lancaster to Columbus, and Gardiner stated he stopped "to take a leak." When the officer went to the area from which Gardiner had appeared, he discovered a pair of bolt cutters laying on top of the garbage in the dumpster, and a rectangular hole cut in the fence. The clippings of wire were on the ground near the hole. In the area where Gardiner claimed he had urinated, the deputy saw no evidence of dampness, and detected no odor. Gardiner and appellant would not give the deputy the specific address or location they had been to, after the officer notified them that the Tractor Supply was not on a direct route between Lancaster and Columbus.
Stewart Parsons, the manager of the Tractor Supply Company, received a call from the sheriff's office telling him that someone had been caught breaking into the fenced area of the store. Parsons had driven around the perimeter of the company earlier that evening, checking the fence and gates, and found no holes in the fence. Lawn tractors were located approximately 30 feet from where the fence had been cut.
Detective Shane Skeen of the sheriff's office arrived on the scene. After waiving his rights, Gardiner told the Detective that they had been to Pataskala to move a friend, and were on their way to Columbus. Gardiner repeated his story that he stopped to "take a leak." The detective noted that Pataskala is not located between Pickerington and Lancaster, nor between Pickerington and Columbus. Gardiner told the detective that a friend had rented the U-Haul truck, and denied cutting the hole in the fence.
After waiving his rights, appellant told the detective they had been to Lancaster or Waverly, he could not remember which. He stated that he had been driving around all day looking for the person they were supposed to help move. He declined to give the name of the person they were supposed to help move, but merely stated it was a friend. He claimed they stopped at the company's parking lot to rest.
The detective later determined that the U-Haul truck had been rented by Thomas Ballard. Ballard claimed he rented the U-Haul truck in his name, because a man who claimed he had no driver's license asked him to. The detective further determined that the U-Haul had been driven only 40 miles from the time it was rented to the time it was impounded by the police. According to the detective, the distance from Lancaster to the Columbus address where the vehicle had been rented was 34 miles. The distance from Lancaster to the Tractor Supply is 20 miles, negating their claim they were driving from Lancaster to Columbus.
Appellant was indicted by the Fairfield County Grand Jury on one count of complicity to commit breaking and entering, and one count of possession of criminal tools. The case proceeded to jury trial. Appellant was convicted as charged. He was sentenced to consecutive sentences of 9 months on each conviction.
In his brief, counsel for appellant states that the brief is filed in keeping with Anders v. California (1967), 386 U.S. 738, and counsel had supported the appeal to the best of his ability and in accordance with the wishes of appellant. In a brief filed pursuant to Anders, supra,
counsel must: (1) advise the court and request permission to withdraw if an appeal is deemed wholly frivolous, (2) submit a brief indicating anything in the record which might arguably support an appeal, and (3) furnish a copy of the brief to the client, who then must be given time to raise any point which he chooses. Id.; State v. Duncan (1978),57 Ohio App.2d 93, 94. Upon receiving a brief that complies with these requirements, this court must independently examine the record to determine whether the appeal is wholly frivolous, and if the court so finds, must overrule the motion to withdraw and affirm the judgment of the trial court. Anders, supra, at 744. We note that counsel for appellant has not strictly complied with the requirements of Anders, as he has not filed a motion to withdraw. However, we will consider the assignments of error raised by appellant, and independently examine the record as required by Anders.
 I
Appellant first argues that the judgment is against the manifest weight of the evidence. Weight of the evidence concerns the inclination of the greater amount of credible evidence, offered in trial, to support one side of the issue rather than the other. State v. Thompkins (1997),78 Ohio St.3d 380, 387. When a court of appeals reverses a judgment on the basis that the verdict is against the weight of the evidence, the appellate court sits as thirteenth juror, and disagrees with the factfinder's resolution of conflicting testimony. Id. This court is to review the entire record, weigh the evidence, and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way.Id. The discretionary power to grant a new trial shall be exercised only in the exceptional case in which the evidence weighs heavily against conviction. Id.
In the instant case, Deputy Stats initially observed a U-Haul truck parked next to a dumpster, in a secluded area behind a business. As he approached the vehicle, appellant immediately slouched down. He next observed another man walking from behind the block wall near a dumpster, who came and sat in the passenger side of the vehicle. Neither possessed a driver's license, and both claimed they were coming from Lancaster, and driving to Columbus. The Tractor Supply Company was not on the route from Lancaster to Columbus.
When asked why they stopped, the passenger stated that he stopped to "take a leak". The deputy immediately became suspicious, as there were numerous public locations in the area where the men could have used indoor restroom facilities. The deputy observed that the passenger's shirt was torn, and a three foot by four foot rectangular hole had been cut in the fence. A pair of bolt cutters was on top of the garbage in the dumpster. Wire clippings were on the ground in the area of the fence. The deputy observed no urine and detected no odor where the passenger claimed he had urinated. Neither man would tell the deputy the specific address or location they were coming from or going to. The manager of the Tractor Supply Company testified that he had inspected the fences and gates before leaving work that day, and found no holes in any of the fences. Valuable lawn tractors were located about 30 feet from where the fence had been cut, and the hole in the fence was large enough to fit a lawn tractor through.
When Detective Skeen interviewed appellant and his passenger, the passenger claimed they were in Pataskala, however, no route from Pataskala would have led to appellant driving the U-Haul to the location where it was parked. Appellant claimed they had been to Lancaster or Waverly, and had been driving around all day looking for a friend. However, the detective later determined that the U-Haul had been driven only 40 miles from the spot where it had been rented, which was 34 miles from the place where the U-Haul was impounded. The U-Haul had been rented by Thomas Ballard, who at the time of the trial was in prison for drug possession. He claimed a man asked him to rent the U-Haul for him, as the man claimed to not have a driver's license.
Based on all the evidence presented, the jury did not lose its way in convicting appellant. While he argues that there was no direct evidence to demonstrate that they had cut the hole in the fence, the circumstantial evidence in the instant case was overwhelming.
The first assignment of error is overruled.
 II
Appellant argues that the court erred in sentencing him to the maximum sentence. Appellant recognizes in his brief that pursuant to R.C. 2929.14
(A)(5), the maximum sentence for each offense is 12 months. Appellant received only 9 months on each offense. However, appellant argues that the aggregate sentence of 18 months, as the sentences were to run consecutively, exceeds the maximum for a single offense.
Because the court did not sentence appellant to the maximum sentence, the court was not required to make the findings needed to impose the maximum sentence. However, the court made appropriate findings on the record to support consecutive sentencing. Pursuant to R.C. 2929.14
(E)(3), sentences should run consecutively only when necessary to protect the public from future crime, to punish the defendant, and the consecutive sentences must not be disproportionate to the seriousness of the defendant's conduct. At the sentencing hearing, the court noted that appellant had a significant prior criminal history, having been convicted of more than 15 crimes, beginning in 1968. The court specifically chose to ignore appellant's driving history and petty theft convictions, concentrating only on the more serious offenses. The record reveals a pattern of drug and property offenses, for which appellant had been in and out of prison since 1968. The court did not err in finding that consecutive sentencing was appropriate in the instant case.
The second assignment of error is overruled.
 III
Appellant first reiterates his argument in Assignment of Error I, claiming that the jury lost its way, making inferences of guilt from a speculative crime. As discussed in I above, the circumstantial evidence in this case was overwhelming, and the jury did not lose its way in convicting appellant.
Appellant also argues that the court's jury instructions relating to circumstantial evidence were improper. Appellant did not object, and therefore we must find plain error in order to reverse. The instruction given to the jury is the standard instruction on direct and circumstantial evidence found in Ohio Jury Instructions. Appellant has not demonstrated plain error in the giving of this instruction.
The third assignment of error is overruled.
We have reviewed the entire record and find no reversible error.
The judgment of the Fairfield County Common Pleas court is affirmed.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Fairfield County Common Pleas court is affirmed. Costs to appellant.
 _____________________________ Gwin, P.J.
Hoffman, J., and Farmer, J., concur.